UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| RYAN ALVAREZ, | ) | |
| | ) | |
| Plaintiff, | ) | **COMPLAINT**   1:18cv13  (AJT/IDD) |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMAND** |
| NEXUS SERVICES, INC. | ) | |
| SERVE: Gentry Locke Rakes & Moore, LLP | ) | |
| 10 Franklin Road SE Suite 900 | ) | |
| Roanoke, VA 24011 | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff Ryan Alvarez ("Plaintiff" or "Mr. Alvarez"), by counsel, moves this Court for entry of judgment in his favor against Defendant Nexus Services, Inc. ("Nexus"), and in support of such complaint alleges and avers as follows:

## NATURE OF ACTION

1. This action states federal claims of discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.* and a state law claim for wrongful termination under the laws of the Commonwealth of Virginia because Defendant discriminated against and retaliated against Plaintiff on the basis of his religion.

## PARTIES

2. Mr. Alvarez is a resident of the Commonwealth of Virginia.

3. Nexus is a Virginia corporation with its principal office located in Verona, Virginia.

4. Nexus maintains an office in this judicial district and regularly conducts business within this judicial district.

5. Nexus provides immigration legal services across the United States.

6. At the time of the events relevant to this Complaint, Mr. Alvarez was employed to work as an attorney at the Nexus location in Fairfax, Virginia.

7. The majority of the events giving rise to this action took place in Fairfax, Virginia.

8. Mr. Alvarez was an "employee" of Defendant within the meaning of 42 U.S.C. § 2000e(f).

9. Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

10. Defendant is engaged in an industry affecting commerce and, on information and belief, has had fifteen (15) or more employees in each of twenty (20) or more calendar weeks in the current or preceding year, within the meaning of 42 U.S.C. § 2000e(b).

## JURISDICTION AND VENUE

11. This Court has federal question jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States, specifically, Title VII.

12. This Court has supplemental jurisdiction over Plaintiff's state law claim in this complaint arising from the same case or controversy pursuant to 28 U.S.C. § 1367.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant conducts business within this judicial district and the majority of the events described in this action took place within this judicial district.

## BACKGROUND

14. Mr. Alvarez began his employment at Nexus in June 2015.

15. At all times throughout the duration of his employment, Mr. Alvarez worked as an attorney at Nexus providing immigration-related legal services to individuals outside of the company.

16. Mr. Alvarez, as a member of The Church of Jesus Christ of Latter-Day Saints (hereinafter, "Mormon Church"), must attend weekly services each Sunday in accordance with his religious beliefs.

17. Since becoming a practicing member of the Mormon Church at the age of nine, Mr. Alvarez only misses Sunday services on very rare occasions, usually due to physical illness.

18. In July 2015, Mr. Alvarez attended a conference in Henderson, Nevada on behalf of Nexus and with several representatives of Nexus.

19. Upon arriving at the conference, Mr. Alvarez researched Mormon churches in Henderson and found a location where he could attend Sunday service in the area.

20. Mr. Alvarez's research showed that attending such a service could be accomplished in approximately one hour, including travel time.

21. Nexus did not provide an agenda for the conference to Mr. Alvarez prior to his arrival in Henderson on Thursday, July 16, 2015.

22. Prior to the conference, Mr. Alvarez was told that he would have free time on Sunday, July 19, 2015.

23. Because Mr. Alvarez was led to believe he would have free time on that Sunday, he did not believe a religious accommodation would be required for him to attend church during the conference.

24. On Friday, July 17, 2015, Nexus provided Mr. Alvarez with an agenda for the conference.

25. Mr. Alvarez, upon receiving the agenda, learned the conference included a mandatory, non-Mormon, worship service that was scheduled to take place on the morning of Sunday, July 19, 2015.

26. The worship service was to be led by the Chief Executive Officer of Nexus, Michael Donovan ("Donovan"), an ordained minister.

*First Request for Religious Accommodation*

27. Upon receipt of the agenda for the conference, Mr. Alvarez and his co-worker, Danielle Jones ("Ms. Jones"), also a member of the Mormon Church, made a reasonable request for a religious accommodation to allow them to attend a weekly Mormon worship service on Sunday, July 19, 2015, as required by their religion.

28. Mr. Alvarez and Ms. Jones requested to attend this Mormon worship service rather than the conference's scheduled worship service.

29. Mr. Alvarez and Ms. Jones made this request for a religious accommodation to their supervisor, Gordon Turner ("Turner"), in person, on or around the evening of Friday, July 17, 2015.

30. Turner did not inform Mr. Alvarez or Ms. Jones whether their request had, or would be, granted or denied.

31. On Saturday, July 18, 2015, after not yet receiving a response from Turner, Mr. Alvarez and Ms. Jones repeated their request for religious accommodation.

32. In the course of repeating their request, Mr. Alvarez and Ms. Jones made it even easier to accommodate: they offered to miss the scheduled breakfast or the first-aid training scheduled for Sunday July 19, 2015 in lieu of missing the conference's worship service so they could attend religious service at a Mormon church.

33. Turner did not inform Mr. Alvarez and/or Ms. Jones whether their amended request had, or would be, granted or denied.

34. Turner later asked Mr. Alvarez and Ms. Jones if they would attend a religious service at a Mormon church that Sunday even if they were not given permission by Nexus to do so.

35. Both Mr. Alvarez and Ms. Jones responded that they would.

36. Nexus responded by sending Mr. Alvarez and Ms. Jones home from the work conference in Henderson that same day, prior to the conclusion of the conference, in retaliation for their request for a religious accommodation.

37. Neither Mr. Alvarez nor Ms. Jones had requested to be sent home.

38. Nexus placed Mr. Alvarez and Ms. Jones on a red-eye flight back to Virginia.

39. Although Nexus ordinarily provided hotel accommodations to its employees traveling overnight on business, Nexus refused to make such accommodations for Mr. Alvarez and Ms. Jones.

40. As a result, Mr. Alvarez and Ms. Jones were forced to sleep on the floor of the airport to make their flight back to Virginia.

41. Donovan informed Mr. Alvarez and Ms. Jones that if they wanted to keep their jobs, they must write a letter to the Board of Nexus and explain why their failure to remain for the duration of the conference was not evidence of their lack of desire to work for Nexus.

42. Mr. Alvarez wrote the letter Turner demanded and sent the letter on Monday, July 20, 2015, but never received a response.

43. On the morning of Tuesday, July 21, 2015, Turner called both Mr. Alvarez and Ms. Jones.

44. Mr. Alvarez was already on his way to work at the Nexus office in Fairfax, Virginia when he received the call from Turner.

45. Turner informed both Mr. Alvarez and Ms. Jones not to come to work on that date.

46. Later that same day, Tuesday, July 21, 2015, Turner called both Mr. Alvarez and Ms. Jones and told them not to return to work the following day, Wednesday, July 22, 2015.

47. Turner later called and requested Mr. Alvarez and Ms. Jones attend a meeting on the evening of Wednesday, July 22, 2015.

48. At that meeting, both Mr. Alvarez and Ms. Jones were provided with written disciplinary warnings, purportedly for showing up late to work.

49. Mr. Alvarez requested a copy of this written disciplinary warning, but it was not provided to him.

50. Mr. Alvarez was a salaried employee without a scheduled start time, and no one at Nexus had ever discussed with Mr. Alvarez any problems related to his arrival time at work in the past.

51. Mr. Alvarez, in fact, had no history of being late for work at Nexus.

52. Although Mr. Alvarez had no scheduled start time, he typically arrived at work between 9:30 a.m. and 10:00 a.m. This time allowed him to work with both east coast and west coast business hours, a necessity of his position as many of his clients were located in California.

53. Mr. Alvarez consistently worked a full business day, including working through lunch on most days.

54. There was no basis whatsoever to for this written disciplinary warning; it was pretextual.

55. This written disciplinary warning provided to Mr. Alvarez by Nexus was intended to discipline Mr. Alvarez for his desire to attend religious services.

56. Mr. Alvarez and Ms. Jones were permitted to return to work at Nexus on Thursday, July 23, 2015.

*Second Request for Religious Accommodation*

57. In mid-October 2015, Mr. Alvarez and Ms. Jones attended another weekend conference on behalf of Nexus in New York.

58. Prior to attending this conference, Mr. Alvarez and Ms. Jones requested a reasonable religious accommodation so that they could attend Mormon services.

59. Mr. Alvarez made his written request via email to one of his supervisors, Richard Moore ("Moore"), to attend service at a Mormon church on Sunday morning during the conference, and to adjust his work schedule on Sunday as required.

60. Mr. Alvarez did not receive a response from Moore about his request for religious accommodation.

61. Mr. Alvarez, in accordance with his religious beliefs, attended the service on Sunday morning.

62. As a result of his attendance to the Sunday service, Mr. Alvarez arrived one-half hour late for the scheduled time of arrival at the conference.

63. Mr. Alvarez received text messages from his co-workers and supervisors inquiring about his location prior to his arrival.

64. In December, an attorney who had recently graduated from law school and started working at Nexus was promoted to the position of Deputy General Counsel for Nexus.

65. The position was not advertised, internally or externally.

66. Had the position been advertised, Mr. Alvarez would have applied.

67. Mr. Alvarez was interested in the position when he learned about it, but it had already been filled.

68. Neither Mr. Alvarez nor Ms. Jones, both of whom had been employed at Nexus for longer and had substantially more legal experience, were considered for the position.

69. Both Mr. Alvarez and his co-worker were more qualified for the Deputy General Counsel position than the individual who was selected.

70. Neither Mr. Alvarez nor his co-worker were selected for the Deputy General Counsel position because of their Mormon faith.

*Wrongful Termination*

71. On Sunday, January 3, 2016, Turner called Mr. Alvarez asked him to take on a serious criminal matter in Charlottesville, Virginia.

72. Mr. Alvarez had very limited experience with criminal law and had not previously performed this type of work for Nexus.

73. Mr. Alvarez informed Turner that he did not believe he was competent to perform this task, which required legal defense of an individual charged with more than one felony offense.

74. In particular, this individual, Bryan Michael Silva ("Mr. Silva") was charged with both a firearm crime under § 18.2-308.2 of the Virginia Code and abduction by force/intimidation under § 18.2-47 of the Virginia Code.

75. Mr. Alvarez stated that he did not believe he could competently represent Mr. Silva.

76. Turner did not respond to Mr. Alvarez's concern.

77. In mid-December, Mr. Alvarez contacted both human resources and Turner to request medical leave for January 5-8, 2016 in order for him to undergo a medical procedure.

78. Mr. Alvarez did not receive a response to this request.

79. On January 5, 2016, Mr. Alvarez missed work for his medical procedure.

80. On January 6, 2016, Ms. Jones arrived unexpectedly at Mr. Alvarez's home to inquire as to why he had not been at work.

81. On January 7, 2016, at Turner's request, Mr. Alvarez traveled to Charlottesville, Virginia to speak to Mr. Silva.

82. While Mr. Alvarez did not agree to represent Mr. Silva, he did agree to interview Mr. Silva to gather basic facts and information about the case.

83. After learning more about the case, Mr. Alvarez reiterated to Nexus that he had very limited prior experience in the field of criminal law, and did not feel he was competent to represent Mr. Silva.

84. Mr. Alvarez, based on his own professional legal judgment, declined to represent Mr. Silva.

85. Specifically, Mr. Alvarez did not feel that he was within his ethical duties under the rules of the Virginia State Bar to undertake this representation, including Mr. Alvarez's duty under Rule 1.1: Competence.

86. On January 8, 2016, Donovan directed Mr. Alvarez to formally appear in Mr. Silva's case.

87. Donovan is not an attorney.

88. Donovan further instructed Mr. Alvarez to sign a *pro hac vice* motion on behalf of Mr. Alvarez's supervisor, Turner.

89. Donavan drafted the *pro hac vice* motion.

90. Donavan did not have an attorney-client relationship with Mr. Silva.

91. Mr. Alvarez could not accept this directive from Donavan regarding his representation or potential representation of any individual pursuant to Virginia State Bar Rule 5.4: Professional Independence of A Lawyer, and specifically, Rule 5.4(c) which states,

> A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services.

92. Mr. Alvarez objected to signing the *pro hac vice* motion as local counsel for the same reason he refused to represent Mr. Silva independently.

93. Under Rule 1:A:4 of the Rules of the Supreme Court of Virginia, local counsel accepts joint responsibility with an out-of-state lawyer to the client, other parties, witnesses, other counsel and to the tribunal in that particular case.

94. Mr. Alvarez, in his professional legal judgment, did not believe he had the experience required to guide Turner, an attorney not barred in the Commonwealth of Virginia, as local counsel for Mr. Silva.

95. Mr. Alvarez determined that if he were to sign the motion drafted by Donovan, such action would constitute a violation of his responsibilities under the Virginia Rules of Professional Conduct.

96. If Mr. Alvarez were to sign the motion drafted by Donovan, based solely on Donovan's insistence and contrary to his own legal judgment, such action would amount to assistance of Donovan in the commission of a criminal offense.

97. Specifically, following Donovan's direction to represent Mr. Silva would have amounted to the Unauthorized Practice of Law by Donovan, a crime punishable under Section 54.1-3904 of the Virginia Code as a Class 1 misdemeanor.

98. For the reasons identified *supra*, Mr. Alvarez told Donovan he would not sign the motion.

99. Turner subsequently called Mr. Alvarez to inform him that Donovan intended to terminate Mr. Alvarez if he refused to sign the motion.

100. Mr. Alvarez felt his options were limited to either engaging in unethical conduct and/or assisting in the commission of a crime, or losing his position at Nexus.

101. Mr. Alvarez opted not to engage in unethical conduct and/or assist in the commission of a crime.

102. Mr. Alvarez resigned from his position in lieu of termination.

103. On or about January 8, 2016, Mr. Alvarez provided Turner with his written resignation and two weeks' notice of his intent to resign from employment.

104. Turner informed Mr. Alvarez he would not be needed for the following two weeks, and demanded he clear his belongings from the office and go home.

105. As a result, January 8, 2016 was Mr. Alvarez's last day of work at Nexus.

106. On May 10, 2016, Mr. Alvarez sent a timely charge of discrimination against Defendant to the Washington Field Office ("WFO") of the United States Equal Employment Opportunity Commission ("EEOC") for religious discrimination and retaliation in violation of the Title VII.

107. On November 20, 2017, EEOC issued a Notice of Right to Sue, which Mr. Alvarez received shortly thereafter.

108. All conditions precedent to the institution of this lawsuit have been fulfilled.

109. Plaintiff has exhausted his administrative remedies as required by 42 U.S.C. § 20002, *et seq*.

110. This matter is timely filed within ninety (90) days of Plaintiff's receipt of his Notice of Right to Sue from the EEOC.

**COUNT I**
**DISCRIMINATION BASED ON RELIGION**
**IN VIOLATION OF TITLE VII**
**42 U.S.C. § 12101, *et seq.***

111. The allegations in the foregoing paragraphs are incorporated as if realleged herein.

112. Nexus discriminated against Mr. Alvarez on the basis of his religion, Mormon.

113. Mr. Alvarez required an accommodation on two separate occasions permitting him to have approximately ninety minutes free from work during either Sunday morning or afternoon so he may attend a weekly service, as required by his religious beliefs.

114. Nexus ignored Mr. Alvarez's reasonable requests for accommodation based on his religious beliefs.

115. Mr. Alvarez made it clear to Nexus that his request for time off on Sundays was due to his religion's service attendance requirements.

116. Nexus took adverse action against Mr. Alvarez for requesting religious accommodations, including the issuance of a disciplinary write-up to Mr. Alvarez and Nexus' failure to consider Mr. Alvarez for promotion.

117. Defendant's conduct was actuated by malice, spite, and ill-will; was willful and wanton, and evinced conscious disregard for Mr. Alvarez's rights.

118. Defendant's acts of malice, spite, and ill will which evince a conscious disregard for the rights of Mr. Alvarez include, but are not limited to their repeated failure to meaningfully respond to Mr. Alvarez's requests for religious accommodation and the adverse actions Nexus took against Mr. Alvarez following these requests.

119. As a direct and proximate result of Defendant's actions, Ms. Alvarez has suffered and continues to suffer severe emotional distress. Such injury includes pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, anxiety and distress of the interruption in health care benefits, depression, anxiety, fearfulness, difficulty sleeping, loss of

enjoyment of life, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past pecuniary losses, future pecuniary losses, litigation expenses including attorneys' fees, and other non-pecuniary losses.

120. Due to the severity of Defendant's conduct, Mr. Alvarez is also entitled to punitive damages.

## COUNT II
## RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY
## IN VIOLATION OF TITLE VII
## 42 U.S.C. § 2000e

121. The allegations in the foregoing paragraphs are incorporated as if realleged herein.

122. Title VII prohibits retaliation for engaging in a protected activity; specifically, in pertinent part, Title VII reads, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of her employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

123. Mr. Alvarez engaged in protected activity when he requested a reasonable religious accommodation from Nexus.

124. Nexus was aware of the protected activity in which Mr. Alvarez engaged.

125. Nexus retaliated against Mr. Alvarez by prohibiting him from taking part in the remainder of the Henderson conference after he made a reasonable request to exercise his religious beliefs.

126. Nexus retaliated against Mr. Alvarez by suspending him from work for a period of two days following his reasonable request for religious accommodation.

127. Nexus retaliated against Mr. Alvarez by requesting him to attend another weekend conference in New York where he was required to work through the entire day on Sunday while ignoring his second request to attend the weekly service required of his religion.

128. Nexus retaliated against Mr. Alvarez by assigning him additional, less desirable job responsibilities such as answering calls on a hotline open twenty-four hours a day, seven days a week.

129. These actions are retaliation prohibited by the anti-retaliation provisions of Title VII.

130. Defendant's conduct was actuated by malice, spite, and ill will; was willful and wanton, and evinced conscious disregard for the rights of Mr. Alvarez.

131. Defendant's acts of malice, spite, and ill will which evince a conscious disregard Mr. Alvarez's rights include failing to acknowledge Mr. Alvarez's reasonable request for religious accommodation, continuing to assign Mr. Alvarez responsibilities that would occupy his entire day on Sundays, and constructively terminating Mr. Alvarez based on pretextual reasons.

132. As a direct and proximate result of Defendant's actions, Mr. Alvarez has suffered and continues to suffer severe emotional distress. Such injury includes pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, anxiety and distress of the interruption in health care benefits, depression, anxiety, fearfulness, difficulty sleeping, loss of enjoyment of life, past and future loss of income and benefits of employment, lost career and

business opportunities and advancement, other past pecuniary losses, future pecuniary losses, litigation expenses including attorneys' fees, and other non-pecuniary losses.

133. Due to the severity of Defendant's conduct, Mr. Alvarez is also entitled to punitive damages.

## COUNT III
## WRONGFUL TERMINATION
## IN VIOLATION OF VIRGINIA COMMON LAW

134. The allegations in the foregoing paragraphs are incorporated as if realleged herein.

135. Pursuant to § 54.1-3909 of the Virginia Code, the Supreme Court of Virginia has the authority to define the practice of law and to promulgate rules and regulations prescribing a code of ethics governing the professional conduct of attorneys.

136. Under § 54.1-3910 of the Virginia Code, the advisory opinions of Standing Committees of the Virginia State Bar, organized and governed by the Supreme Court of Virginia, on matters including legal ethics, lawyer advertising and solicitation, and unauthorized practice of law are incorporated into the Virginia Code.

137. It is the public policy of Virginia that non-attorneys do not practice law, as defined by the Supreme Court of Virginia and incorporated by reference into the Virginia Code.

138. It is the public policy of Virginia to ensure that attorneys do not assist non-attorneys with the unauthorized practice of law, as defined by the Supreme Court of Virginia and incorporated by reference into the Virginia Code.

139. Rule 5.4(c) of the Virginia State Bar's Professional Rules of Conduct requires that a lawyer not permit a person who recommends, employs, or pays the lawyer to render legal

services for another to direct or regulate the lawyer's professional judgment in rendering such legal services.

140. It violates the public policy of the Commonwealth of Virginia for a non-lawyer supervisor to use termination or the threat of termination as a device to regulate a lawyer employee's professional judgment in rendering legal services.

141. It is the public policy of Virginia to ensure that attorneys provide competent representation to their clients, as described in the Professional Rules of Conduct and described and elaborated upon in the advisory opinions of the Virginia State Bar Standing Committee on Legal Ethics and incorporated into the Code of Virginia.

142. Rule 1.1 of the Virginia State Bar's Professional Rules of Conduct requires that lawyers provide competent representation to clients, including possession of the legal knowledge, skill, thoroughness, and representation necessary for the representation.

143. It violates the public policy of the Commonwealth of Virginia for a non-lawyer supervisor to use termination or the threat of termination as a device to circumvent a lawyer employee's professional judgment regarding his competence to render certain legal services.

144. It is the public policy of Virginia to ensure that attorneys do not engage or assist others in engaging in the commission of criminal activity, as described and elaborated upon in the advisory opinions of the Virginia State Bar Standing Committee on Legal Ethics and incorporated into the Code of Virginia.

145. Unauthorized Practice of Law is a criminal offense in the Commonwealth of Virginia, punishable as a Class 1 misdemeanor under § 54.1-3904 of the Code of Virginia.

146. Nexus constructively terminated Mr. Alvarez's employment when Mr. Alvarez refused to allow a non-lawyer supervisor and employer to regulate his professional judgment in rendering legal services.

147. Nexus constructively terminated Mr. Alvarez's employment after Mr. Alvarez refused to assist Donovan in the commission of a crime, Unauthorized Practice of Law.

148. As a result, Nexus terminated Mr. Alvarez's employment in violation of Virginia public policy.

149. Defendant's conduct constitutes wrongful termination.

150. As a result of Defendants' actions, Mr. Alvarez is entitled to compensatory and punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff RYAN ALVAREZ requests that this Court enter judgment in his favor, and against Defendant Nexus on all Counts and:

(a) Award Mr. Alvarez compensatory damages, plus past and future pecuniary damages on each of the above-stated Counts in an amount that can only be determined in discovery; and in addition

(b) Award Mr. Alvarez punitive damages as to each of the above-stated Counts in an amount to be proven at trial; and in addition

(c) Award Mr. Alvarez attorneys' fees, expert fees, and costs of this action as may be permitted by law; and in addition

(d) Award Mr. Alvarez such other and further relief as may be appropriate.

## **JURY DEMAND**

**PLAINTIFF RYAN ALVAREZ DEMANDS A TRIAL BY JURY.**

Dated: January 3, 2018 Respectfully,

/s/
Joshua Erlich, VA Bar No. 81298
Davia Craumer, VA Bar No. 87426
Katherine Herrmann, VA Bar No. 83203
THE ERLICH LAW OFFICE, PLLC
2111 Wilson Blvd., Ste. 700
Arlington, VA 22201
Tel: (703) 791-9087
Fax: (703) 722-8114
Email: jerlich@erlichlawoffice.com
dcraumer@erlichlawoffice.com
kherrmann@erlichalwoffice.com