IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| RYAN ALVAREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:18-cv-13 (AJT/IDD) |
| | ) | |
| NEXUS SERVICES, INC. | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff has sued his former employer for religious discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and for wrongful termination under Virginia common law. Defendant has filed a Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) [Doc. No. 6] (the "Motion"). For the reasons set forth below, the Motion is GRANTED and this action is DISMISSED.

### I.    FACTUAL ALLEGATIONS

Plaintiff alleges the following:

Defendant Nexus Services, Inc. ("Nexus" or "Defendant") provides immigration services across the country. Compl. ¶ 5.  Plaintiff began his employment in June 2015 and throughout the duration of his employment worked as an attorney at Nexus providing immigration-related legal services to individuals outside of the company. *Id.* ¶¶14-15. Plaintiff has been a member of The Church of Jesus of Latter-Day Saints (hereinafter, "Mormon Church") since the age of nine. *Id.* ¶ 17. As a member of the Mormon Church, he must attend weekly services each Sunday in

accordance with his religious beliefs and only misses Sunday services on very rare occasions, usually due to physical illness. *Id.* ¶¶ 16-17.

In July 2015, Plaintiff attended a work conference in Henderson, Nevada on behalf of Nexus and with several representatives of Nexus. *Id.* ¶ 18. Upon arriving at the conference, he located a Mormon church where he could attend Sunday services over the course of approximately one hour, including travel time. *Id.* ¶¶ 19-20. Nexus did not provide an agenda for the conference before he arrived in Henderson on Thursday, July 16, 2015; and prior to the conference, he "was told that he would have free time on Sunday, July 19, 2015." *Id.* ¶¶ 21-22. He does not allege who provided this information or what information he provided to the person who provided the information. Nevertheless, Plaintiff alleges that "[b]ecause [Plaintiff] was led to believe he would have free time on that Sunday, he did not believe a religious accommodation would be required for him to attend church during the conference." *Id.* ¶ 23. Then, on Friday, July 17, 2015, Nexus provided Plaintiff with an itinerary of the conference and he learned the conference included a mandatory, non-Mormon service, scheduled to take place on the morning of Sunday, July 19, 2015, to be led by the Nexus' CEO, Michael Donovan ("Donovan"), an ordained minister. *Id.* ¶¶ 24-26. On or around the evening of Friday, July 17, 2015, once Plaintiff had knowledge of the required mandatory service, he and his co-worker Danielle Jones ("Jones"), also a member of the Mormon Church, made to their supervisor, Gordon Turner ("Turner") "a reasonable request for a religious accommodation to allow them to attend a weekly Mormon worship service on Sunday, July 20, 2015, as required by their religion." *Id.* ¶¶ 27-29. After not hearing from Turner concerning whether their request had, or would be, granted or denied, Plaintiff and Jones repeated their request for a religious accommodation on Saturday, July 18, 2015. *Id.* ¶¶ 30-31. In response, and without specifically stating whether their request

2

would be granted or denied, Turner asked if they would attend a Mormon Church service that Sunday even if they were not given permission by Nexus to do so; and both responded that they would. *Id.* ¶¶ 33-34. "Nexus responded by sending [Plaintiff] and [Jones] home from the work conference in Henderson that same day [Saturday], prior to the conclusion of the conference, in retaliation for their request for a religious accommodation." *Id.* ¶ 36. Nexus placed both on a "red-eye flight" that Saturday night back to Virginia. *Id.* ¶ 38.

Shortly after being sent home early from the conference, Donovan informed Plaintiff and Jones that if they wanted to keep their jobs, they must write a letter to the Board of Nexus explaining "why their failure to remain for the duration of the conference was not evidence of a lack of desire to work for Nexus." *Id.* ¶ 41. On Monday, July 20, 2015, Plaintiff submitted the written submission demanded, but never received a response. *Id.* ¶ 42. On Tuesday, July 21, 2015, Turner called Plaintiff and Jones to inform them not to come to work on that date or the following day, Wednesday, July 22, 2015, but to attend a meeting Wednesday evening. *Id.* ¶¶ 43, 45-47. At that meeting, he and Jones received a "written disciplinary warning[], purportedly for showing up late for work[,]" even though Plaintiff is a salaried employee with no history of ever being late for work at Nexus. *Id.* ¶¶ 48, 50-51. That "written warning" stated as follows:

**Addendum – Corrective Action**                    *Ryan Alvarez – 7/22/2015*

<u>**Description of Incident:**</u>

On July 18, 2015, Ryan Alvarez communicated to his direct supervisor a need to miss portions of the All Staff agenda on July 19, 2015 for personal reasons.    Mr. Alvarez communicated this need for the first time on July 18, 2015, long after the agenda had been finalized. Immigration attorneys are seen as leaders amongst Nexus staff, and entering/departing through general session meetings would have been seen as distracting and provide a negative example for the team. Therefore Mr. Alvarez was given transportation home and missed a significant portion of the All Staff event in order to prevent having to enter and exit the conference during general session scheduled events.

3

***Improvements Needed Immediately:***

Mr. Alvarez must immediately ensure that all communication about potential schedule conflicts or personal needs be communicated in advance, as far as possible, in order to guarantee the company would have the opportunity to make necessary accommodations.

Mr. Alvarez must immediately engage as an active member of the team. Actions that serve to demonstrate superiority over employees must end immediately, including behavior exemplified in the present case that demonstrated and expectation that schedule modifications would be made at the last minute for him, when such scheduling modifications have not been made for other employees. Mr. Alvarez must also engage in group activities and in communication with Nexus staff and clients while in the   office or traveling to other offices.

Mr. Alvarez must immediately ensure that he reports to work promptly for the beginning of his shift, and that he not leave early without approval from his direct supervisor.

Mr. Alvarez must ensure all communication to his direct supervisor, other company leaders, all Nexus staff and clients (current and prospective) be clear, concise, and professional. An example of this expectation is exemplified by the letter presented to the board, by Mr. Alvarez, explaining the circumstances surrounding the present issue.

This is a ***WRITTEN WARNING.*** Failure to immediately correct performance deficiencies will result in additional corrective action, up to and including termination of employment.

[Doc. No. 7-1] ("Def.'s Ex. A").

After the meeting, Plaintiff and Jones were permitted to return to work on Thursday, July 23, 2015. Compl. ¶ 56.  There are no allegations that Plaintiff suffered any financial penalty or other employment action other than the issuance of the warning.

Around mid-October 2015, Plaintiff and Jones attended another weekend conference on behalf of Nexus in New York. *Id.* ¶ 57. Before the conference, they requested a religious accommodation so that they could attend a Mormon service. *Id.* ¶ 58. Plaintiff submitted his request to one of his supervisors, Richard Moore ("Moore") via email. *Id.* ¶ 59. Plaintiff did not receive a response from Moore so Defendant attended a Mormon service on that Sunday. *Id.* ¶¶ 60-61. As a result, Plaintiff was thirty minutes late to the conference. *Id.* ¶ 62. Before his arrival

4

at the conference, Plaintiff received text messages from his co-workers and supervisors inquiring about his location. *Id.* ¶ 63.

In December, 2015, approximately two months after the October conference, Nexus promoted an attorney, who had recently graduated from law school and started working at Nexus to the position of Deputy General Counsel. *Id.* ¶ 64. This position had not been advertised and had Plaintiff known about the position, he would have applied. *Id.* ¶¶ 65-66. Plaintiff alleges that he and Jones were more qualified than the individual who was promoted and that neither was selected for the Deputy General Counsel position because of their Mormon faith. *Id.* ¶¶ 68-70.

On Sunday, January 3, 2016, Turner, who is a lawyer, asked Plaintiff if he could handle a serious criminal matter in Charlottesville, Virginia. *Id.* ¶ 71. Plaintiff had very limited experience with criminal law and had not previously performed this type of work for Nexus and told Turner that he believed he was not competent to represent this particular client. *Id.* ¶¶ 72-73. Nevertheless, Plaintiff agreed to interview the client to gather facts about the case. *Id.* ¶ 82. After conducting the client interview, Plaintiff again expressed his concerns about representing this individual because he did not feel he was competent to represent him, and "based on his own professional legal judgment, declined to represent [him]" since he believed it violated his ethical duties under Virginia State Bar's Professional Rules of Conduct ("Rules of Conduct"). *Id.* ¶ 83-85. On January 8, 2016, Donovan, who is not a lawyer, directed Plaintiff to formally appear in the client's case and to sign a motion on behalf of Turner to have Turner admitted to the case *pro hac vice*. *Id.* ¶¶ 86-88. Plaintiff refused on the grounds that he believed such action would amount to assisting Donovan in committing the criminal offense of the unauthorized practice of law, a misdemeanor punishable under Va. Code § 54.1-3904, and because it would violate Virginia State Bar Rule 5.4(c), Professional Independence of a Lawyer, which provides that "[a]

5

lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering services." *Id.* ¶¶ 91-98.

Turner subsequently called Plaintiff to inform him that Donovan intended to terminate him if he refused to sign the motion. *Id.* ¶ 99. Plaintiff "felt his options were limited to either engag[e] in unethical conduct and/or assist[] in the commission of a crime, or los[e] his position at Nexus . . . [and] opted not to engage in unethical conduct and/or assist in the commission of a crime" and resigned "in lieu of being terminated." *Id.* ¶¶ 100-02. Based on this assessment, Plaintiff informed Turner of his intent to resign in two weeks and Turner told him that he could resign effective immediately. *Id.* ¶¶ 103-04. On May 10, 2016, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") for religious discrimination and retaliation in violation of Title VII and on November 20, 2017, EEOC issued a Notice of a Right to Sue. *Id.* ¶¶ 106-07.

## II.     STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994); *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1994). A claim should be dismissed "if, after accepting all well-pleaded allegations in the plaintiff's complaint as true . . . it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *see also Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001). In considering a motion to dismiss, "the material allegations of the complaint are taken as admitted," *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted), and the

court may consider exhibits attached to the complaint, *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F. 2d 1462, 1465 (4th Cir. 1991).

Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Jenkins*, 395 U.S. at 421; *see also Bd. of Trustees v. Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473, 475 (E.D. Va. 2007). In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Nevertheless, while Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (the complaint "must be enough to raise a right to relief above the speculative level" to one that is "plausible on its face"); *see also Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). As the Supreme Court stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008), "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw a reasonable inference that the defendant is liable for the conduct alleged."

### III.   ANALYSIS

As an initial matter, Plaintiff contends that when deciding the Motion, the Court cannot properly consider the actual text of the written disciplinary warning attached as an exhibit to Defendant's Motion. *See* Pl.'s Opp. at 7-8. Plaintiff does not dispute the authenticity of the written disciplinary warning but rather that "Plaintiff's Complaint contains no quotation from, and limited reference to, the written warning." *Id.* at 8.

In the Complaint, Plaintiff referenced and relied on the written disciplinary warning to support his claims that he was disciplined for making a religious accommodation request,

7

specifically alleging that there was no "basis whatsoever" for issuing the written disciplinary warning and that it was "intended to discipline [Plaintiff] for his desire to attend religious services." Compl. ¶¶ 54-55. "[W]hen a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint if it was integral to and explicitly relied on in the complaint and if the plaintiff[] do[es] not challenge its authenticity.'" *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (citations and alterations omitted). Given Plaintiff's claims, the written disciplinary warning is "integral to and explicitly relied on" by Plaintiff in order to establish his claims and the Court will consider the undisputed substance of the written disciplinary warning. *See id.*

A. **Discrimination Claim Based on Religion in Violation of Title VII (Count I)**

A plaintiff may base a religious discrimination claim based on an employer's failure to accommodate his religious beliefs or its disparate treatment of him because of his beliefs. *See Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1017 (4th Cir. 1996). Here, Plaintiff claims he was discriminated against and disparately treated because of his religion when Defendant failed to accommodate his religious beliefs during the July, 2015 conference and again during the October, 2015 conference. To support this claim, "[a] plaintiff must first establish a prima facie claim by showing that '(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement.'" *E.E.O.C. v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008) (quoting *Chalmers*, 101 F.3d at 1019).

1. <u>Plaintiff has failed to state a claim of discrimination based on a failure to accommodate his religious beliefs during the July, 2015 conference.</u>

With respect to the July, 2015 conference, Defendant does not dispute that Plaintiff has adequately alleged a bona fide religious belief. Plaintiff has also sufficiently alleged that his religious beliefs conflicted with an employment requirement, as he was required to attend conferences and perform work duties on Sunday, the day in which he observes his religious beliefs. Therefore, the Court must determine whether Plaintiff has sufficiently alleged facts that make plausible his claim that he adequately informed his employer of his religious belief and was disciplined for his failure to comply with the conflicting employment requirement. While he alleges that he "understood from an unnamed individual that he would have "free time" on Sunday, Plaintiff also alleges that he first made a request to one of his supervisors to attend a Sunday religious service during the conference only on Friday evening, July 17, 2015, after having already arrived at the conference on Thursday, July 16, 2015. Under the circumstances alleged, Plaintiff has failed to allege facts that he made his request timely, as the timing and circumstances of Plaintiff's request did not allow Nexus a reasonable opportunity to prepare for his absence. *See Chalmers*, 101 F.3d at 1020 and *Daniel v. Kroger Ltd. P'ship I*, No. 3:11CV245-DWD, 2011 WL 5119372, at *8 (E.D. Va. Oct. 27, 2011).

In any event, Plaintiff has failed to allege facts that make plausible any claim that Nexus failed to accommodate his request during the July conference. According to Plaintiff's allegations, on Saturday, July 18, 2015, well within a reasonable time after Plaintiff made his request, his supervisor asked whether Plaintiff would attend the Sunday religious service with or without permission and after he responded that he would attend the service even if he did not have permission, Nexus accommodated his request to fulfill his religious commitments by excusing him from the conference and sending him home at company expense on Saturday evening. While his request for an accommodation might have been satisfied through a different

9

resolution, and was not the accommodation that the Plaintiff preferred, Nexus' actions did not constitute a failure to provide a religious accommodation as a matter of law. *See Firestone Fibers & Textiles Co.,* 515 F.3d at 312. In that regard, an employer has the right to assess the impact of a request on the company's operations and its employees and fashion the accommodation in a way that allows for the accommodation while at the same time, minimizing the impact on the company. *Id.* at 314-15. Here, as Nexus explained, "[i]mmigration lawyers are seen as leaders amongst Nexus staff, and entering/departing through general session meetings would be seen as distracting and provide a negative example for the team." Def.'s Ex. A at 3. Plaintiff has not alleged facts that make plausible that this facially legitimate, non-discriminatory reason for the particular accommodation extended was not the real reason or a pretext for religious discrimination. Nor do the facts alleged make plausible that he was disciplined because he made the request and received the accommodation. Neither the written warning nor Turner's direction to remain at home on Tuesday and Wednesday, while Turner and other staff remained at the conference, constitutes an adverse employment action or an action that constitutes "discipline" for the purposes of a failure to accommodate claim. There are no allegations that immediately following or shortly after the conference, he was terminated or demoted, that his duties or responsibilities materially changed or that he experienced financial consequences. For all these reasons, Plaintiff has failed to allege facts that make plausible that he experienced discrimination because of a religious accommodation in connection with the July conference.

      2.    <u>Plaintiff has failed to state a claim of discrimination based on a failure to accommodate his religious beliefs during the October, 2015 conference.</u>

Plaintiff has also failed to allege facts that make plausible his claim that he experienced discrimination in connection with the October, 2015 conference. First, Plaintiff alleges that he did, in fact, attend Sunday services after giving Nexus notice and a request that he be

accommodated. He fails, however, to allege any actions that would constitute "discipline" as a result of his attending that Sunday service. Plaintiff alleges that he received text messages from his co-workers and supervisors inquiring about his arrival at the conference but alleges no facts that give rise to a plausible inference that he was disciplined for his tardiness during the October conference. Plaintiff has therefore failed to state a claim for failure to accommodate his religious beliefs.

       3.    <u>Plaintiff has failed to state a claim of discrimination based on disparate treatment.</u>

Plaintiff also fails to allege facts that make plausible his claim of religious discrimination based on disparate treatment. To support of claim of disparate treatment, "an employee must demonstrate that the employer treated h[im] differently than other employees because of h[is] religious beliefs." *Chalmers*, 101 F.3d at 1017 (emphasis omitted). Additionally, a plaintiff asserting a disparate treatment claim under Title VII must also allege that he suffered an adverse employment action, which includes "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change to benefits." *See Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (internal quotation marks omitted).

Here, Plaintiff conclusorily alleges that Defendant failed to promote him in December 2015 as a result of his requests for an accommodation. However, in order to establish a prima facie case of discrimination based on failure to promote, a plaintiff must show that "(1) []he is a member of a protected group, (2) there was a specific position for which []he applied, (3) []he was qualified for that position, and (4) [plaintiff's employer] rejected h[is] application under circumstances that give rise to an inference of discrimination." *Williams v. Giant Food, Inc.*, 370 F.3d 423, 430 (4th Cir. 2004).

Plaintiff has adequately alleged that he a member of a protected group; and the Court accepts without deciding that he has adequately alleged that he was qualified for the position, even though he has also alleged that he was not competent to undertake certain legal assignments. *See* Compl. ¶¶ 72-73, 75. Plaintiff does not allege that he applied for the position but affirmatively alleges that he did not apply for the position because it was not advertised; and had he known of the opening, he would have applied. Under those circumstances, a plaintiff may satisfy the "application" prong of his prima facie case by showing that he had made known his interest in being considered for promotion. *Williams*, 370 F.3d at 431 (citing *Mauro v. Southern New England Telcomms., Inc.* 208 F. 3d 384, 387 (2d Cir. 2000) (stating that the application requirement is relaxed where the "plaintiff indicated to the employer an interest in being promoted to a particular class of positions, but was unaware of specific available positions because the employer never posted them"). Plaintiff has made no such allegations. Plaintiff has also failed to adequately allege facts that make plausible that Nexus refused to consider him under circumstances that give rise to an inference of discrimination. The temporal proximity of the October, 2015 conference to the hiring decision for a deputy general counsel in December, 2015 is not sufficiently close in time to allow any inference of causality in light of all the circumstances alleged, including the lack of any discipline immediately following that conference. Rather, he does nothing more than conclusorily allege that his October 2015 religious accommodations were causally connected to Defendant's failure to promote him in December 2015. For these reasons, Plaintiff has failed to state a claim for failure to promote.

**C.    Unlawful Retaliation Claim in Violation of Title VII, 42 U.S.C. 2000e (Count II)**

Plaintiff claims that he was retaliated against in a variety ways after he requested a religious accommodation during the July and October, 2015 conferences including: (1)

prohibiting him from taking part in the remainder of the July 2015 conference; (2) "suspending" him from work for a period of two days; (3) requesting that he attend the October, 2015, which required that he work on Sunday; and (4) assigning him less desirable job responsibilities. To state a claim of retaliation under Title VII, a plaintiff must show that "(1) []he engaged in a protected activity: (2) the employer acted adversely against [him]; and (3) there was a causal connection between the protected activity and the asserted adverse action." *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008) (citing *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007)).

        1.    <u>Plaintiff fails to allege Defendant's retaliatory actions were materially adverse employment actions.</u>

Defendant does not dispute that Plaintiff engaged in a protected activity but rather contends that Plaintiff's allegations fail to show that he suffered a materially adverse action as well as a causal connection between his protected activity and any claimed adverse actions.

For the purposes of a Title VII retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations marks omitted). "Whether an employer's action is likely to dissuade a worker is examined from an objective reasonable worker perspective." *Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 2d 607, 632 (E.D. Va. 2011) (citing *Burlington*, 548 U.S. at 68).

      *a. Early dismissal from July conference and the subsequent direction not to attend two days of work*

Plaintiff claims that he was suspended for a period of two days following his reasonable request for religious accommodation. However, Plaintiff has not alleged any facts to show that his early release from the July conference or his two day absence from work following the

13

conference produced any "injury or harm" sufficient to make plausible that he suffered an adverse action in retaliation for protected activity. *See Burlington*, 548 U.S. at 67 ("The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces injury or harm."); *see also Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 429 (4th Cir. 2015) (written and verbal reprimands not adverse action); *Jensen-Graf v. Chesapeake Employers' Ins. Co.*, 616 F. App'x 596, 598 (4th Cir. 2015) (employee's placement on performance improvement plan not adverse action); *Lacasse v. Didlake, Inc.,* 194 F. Supp. 3d 494, 504 (E.D. Va. 2016), *aff'd*, 712 F. App'x 231 (4th Cir. 2018) (paid three-day suspension not adverse action). Viewed in a light most favorable to the Plaintiff, Plaintiff has failed to allege facts that make plausible that he suffered a materially adverse employment action as a result of these alleged actions.

### b. *Requiring Plaintiff to work on Sunday during October, 2015 conference*

Likewise, Plaintiff has failed to allege facts that make plausible that Nexus' request that he attend the October, 2015 conference was retaliatory for his requesting a religious accommodation at the July, 2015 conference. Plaintiff's theory appears to be that by requesting Plaintiff to attend a second conference which would require his working on Sunday, he was subjected to a materially adverse action. Although the ultimate test is an objective standard, "the fact that an employee continues to be undeterred . . . may shed light as to whether the actions are sufficiently material and adverse to be actionable." *Wells v. Gates*, 336 F. App'x 378, 384 (4th Cir. 2009) (internal quotation marks omitted). There are no facts that make plausible that a reasonable worker would be dissuaded from engaging in protected conduct by having to work on one Sunday, while still able to attend religious services, and in fact, there is no claim that

14

Plaintiff was harmed or deterred from engaging in protected activity. Therefore, Plaintiff has failed to state a claim for retaliation based on the October, 2015 conference.

### c. Less desirable job assignments

Similarly, Plaintiff fails to allege facts that make plausible that his assignment to less desirable job responsibilities was materially adverse. The "reassignment of job duties is not automatically actionable." *Burlington*, 548 U.S. at 71. "Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* (citations and quotations marks omitted). Factors such as "changes to the terms, conditions, or benefits of the plaintiff's employment" may be considered when evaluating "all the circumstances." *Williams v. Prince William Cty., Va.,* 645 F. App'x 243, 245 (4th Cir. 2016) (citations and internal quotation marks omitted). Further, "[t]he mere fact that a new job assignment is less appealing to the employee, however, does not constitute adverse action." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004). "A 'reassignment can only form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect.'" *Id.* (quoting *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999).

Plaintiff's allegations, viewed in the light most favorable to him, fail to sufficient allege any detriment as a result of the alleged new, less desirable job assignments. Nor have the facts alleged make plausible that the additional responsibilities that are alleged, such as answering calls on a hotline, would dissuade a reasonable person from engaging in the protected activity. Plaintiff has accordingly failed to allege that he suffered a materially adverse employment action in retaliation for his request for a religious accommodation.

Plaintiff has also failed to allege sufficiently a causal connection between any retaliatory actions and his protected activity. In that regard, a plaintiff asserting a retaliation claim under § 2000e-3(a) must establish that his "protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). "Although it is far from conclusive, temporal proximity between the protected activity and the adverse action often suffices for a "'prima face case of causality.'" *Chamblee v. Old Dominion Sec. Co.*, No. 3:13CV820, 2014 WL 1415095, at *7 (E.D. Va. Apr. 11, 2014) (quoting *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006)). However, the temporal proximity between the employee's protected activity and adverse action against the employee must be "very close" to establish a prima facie case of causation. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citations and internal quotation marks omitted). The Complaint does not allege when Plaintiff was assigned less desirable job responsibilities and therefore the allegations fail to show a temporal proximity between his request for religious accommodation and the alleged adverse action. Similarly, Plaintiff has failed to allege facts to demonstrate temporal proximity between his request for a religious accommodation in July, 2015 and Defendant's requiring him to work on a Sunday during the October, 2015 conference. Therefore, the facts fail to sufficiently demonstrate a "but-for" cause between Plaintiff's request for a religious accommodation and the alleged adverse action.

Lastly, although Plaintiff sufficiently alleges temporal proximity in connection to his religious accommodation request for the July, 2015 conference and his being sent home early from that conference, because Plaintiff has failed to allege facts that make plausible that these

retaliatory acts were materially adverse, Plaintiff cannot establish a prima facie case of discrimination based on retaliation.[3]

For the above reasons, Plaintiff having failed to establish a prima facie case of retaliation in violation of Title VII and Count II of the Complaint is dismissed.

### D.   Wrongful Termination Claim in Violation of Virginia Common Law (Count III)

Plaintiff alleges that he was constructively discharged for refusing to engage in conduct that would have violated Virginia State Bar Rules of Professional Conduct 1.1 and 5.4(c) and which amounted to assisting in the unauthorized practice of law in violation of Va. Code § 54.1-3904.[4][5] Defendant contends that Plaintiff has alleged that he resigned, not terminated, and that in any event, he was an at-will employee and has failed to allege facts sufficient to make plausible that any "discharge" fell within any exception under Virginia law to the employment at will doctrine.

As an initial matter, Plaintiff has, in fact, alleged that he was not terminated; he resigned before being terminated by the Defendant, Compl. ¶ 102; and Plaintiff's claim necessarily rests upon a claim of constructive discharge.

---

[3] Plaintiff has also failed to allege other facts or circumstances, such as a pattern of animus that would allow an inference of a causal connection between the protected activity and the adverse action. *See e.g Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (recurring retaliatory animus during the intervening period sufficient to satisfy causation in the absence of temporal proximity); *Hart v. Hanover Cty. Sch. Bd.*, No. 3:10-CV-794, 2013 WL 1867388, at *5 (E.D. Va. May 2, 2013), *aff'd*, 547 F. App'x 298 (4th Cir. 2013) (finding plaintiff's failure to allege temporal proximity or at least an explanation for its absence fatal to a retaliation claim).

[4] Rule 5.4(c) of the Virginia State Bar's Professional Rules of Conduct ("Rule 5.4(c)") requires that a lawyer not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services. Rule 1.1 of the Virginia State Bar's Professional Rules of Conduct ("Rule 1.1") requires that lawyers provide competent representation to clients.

[5] Section 54.1-3904 of Virginia Code provides:

> Any person who practices law without being authorized or licensed shall be guilty of a Class 1 misdemeanor. A collection agency may refer debts to an attorney for collection with the creditor's approval of the referral and the fee arrangement and shall not be deemed to be engaged in the unauthorized practice of law. An attorney is permitted by the creditor's authorization to enter into such representation agreements.

It appears unsettled whether under Virginia law a cause of action exists for wrongful constructive termination in Virginia. Nevertheless, the Fourth Circuit has recognized constructive discharge in the workplace, *Bristow v. The Daily Press, Inc.* 770 F.2d 1251 (4th Cir. 1985); and the Court accepts for the purposes of this Motion that such a claim exists under Virginia law.

"A constructive discharge occurs when 'an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job.'" *Id.* at 1255 (quoting *Holsey v. Armour & Co.*, 743 F.2d 199, 209 (4th Cir. 1984). A plaintiff must allege, however, that the "the resignation was occasioned by conduct 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community[.]'" *Johnson v. Behsudi*, 52 Va. Cir. 533 (1997) (quoting *Russo v. White*, 241 Va. 23, 27 (1991)). Plaintiff alleges, *inter alia,* that he resigned to avoid termination for refusing to sign the *pro hac vice* motion drafted by a non-attorney on behalf of a licensed attorney because he believed signing such a motion would amount to aiding in the unauthorized practice of law in violation of Va. Code § 54.1-3904.  Those allegations fail to allege facts that make plausible that Defendant's conduct was so intolerable or so outrageous in character as to support a claim of constructive discharge. Therefore, Plaintiff fails to state a claim for constructive discharge.

Having found that Plaintiff's claim does not support a constructive discharge claim, the Court next considers whether Nexus' alleged conduct brings the Plaintiff within one of Virginia's public policy exceptions to the employment-at-will doctrine, a so-called "*Bowman claim*," named after the case in which Virginia "first recognized an exception to the doctrine of employment-at-will based on an employer's violation of public policy in the discharge of an

employee." *Rowan v. Tractor Supply Co.*, 236 Va. 209, 213, 559 S.E.2d 709, 710 (2002);

*Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985). Virginia has recognized

a wrongful discharge claim based on three *Bowman* claim exceptions to the employment-at-will

doctrine:

> (1) where the employer "violated a policy enabling the exercise of an employee's
>
> statutorily created right," *Rowan*, 236 Va. at 213 (citing *Bowman*); *see also Devnew v.*
>
> *Brown & Brown, Inc.,* 396 F. Supp. 2d 665, 674 (E.D. Va. 2005) (statutes creating an
>
> affirmative duty may fit within an exception to Virginia's employment at-will doctrine);
>
> (2) where "the public policy violated by the employer was explicitly expressed in the
>
> statute and the employee was clearly a member of that class of persons directly entitled
>
> the protection enunciated by the public policy," *Rowan*, 236 Va. at 213; *see also Storey v.*
>
> *Patient First Corp.*, 207 F. Supp. 2d 431, 451 (E.D. Va. 2002); and
>
> (3) where the wrongful discharge "was based on the employee's refusal to engage
>
> in a criminal act." *Rowan*, 236 Va. at 214.

Plaintiff initially relies on Rule 1.1 and 5.4(c). Neither explicitly expresses a public

policy nor creates a statutorily created right.[9] It is arguable that Rule 1.1 confers an affirmative

duty on attorneys, but Plaintiff has failed to allege facts that make plausible that Defendant

directed him to violate Rule 1.1. In that regard, the comment section of Rule 1.1 provides that

"[a] lawyer need not necessarily have special training or prior experience to handle legal

problems of a type with which the lawyer is unfamiliar. A newly admitted lawyer can be as

competent as a practitioner with long experience . . . A lawyer can provide adequate

---

[9] As to Rule 5.4(c), compare Rule 5.4(c) with Va. Code § 54.01-3904, considered in *Rubin v. Am. Soc. of Travel Agents, Inc.,* 78 Va. Cir. 1 (2008) (concluding that a violation of § 54.01-3904, pertaining to practicing law without a license, "does not create an enforceable statutory right . . . [since Va. Code § 54.01–3904] merely prescribes a penalty for practicing law without being authorized or licensed.")

representation in a wholly novel field through necessary study. Competent representation can also be provided through the association of a lawyer of established competence in the field in question."

Although Plaintiff alleges that he believes he was not competent to represent a client in a criminal matter based on his limited experience in the field of criminal law, his limited experience did not necessarily render him incompetent under Rule 1.1. In any event, according to the Plaintiff, he was not asked to represent a client in a criminal matter without supervision. But rather sign a *pro hac vice* motion to allow his supervising lawyer to appear on behalf of the client. The Plaintiff has therefore failed to allege facts that make plausible that Defendant asked him to violate Rule 1.1.

Lastly, Plaintiff has also failed to allege facts that make plausible that his discharge was based on Defendant's directing him to aid in the commission of criminal offense in violation of Va. Code § 54.1-3904. Plaintiff's allegations fail to demonstrate that by signing the *pro hac* motion, he would have assisted Donovan, a non-attorney, in practicing law without a license.

For these reasons, Plaintiff has failed to allege facts that make plausible his wrongful termination and Count III is dismissed.

## IV.   CONCLUSION

For the reasons stated above, it is hereby

ORDERED that Defendant's Motion to Dismiss [Doc. No. 6] be, and the same hereby is,

20

GRANTED and this action is DISMISSED.

      The Clerk is directed to forward copies of this Order to all counsel of record.

 

_____
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
May 30, 2018